**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Susan Viola,<br><br>      Plaintiff,<br><br>    -v-<br><br>State University of New York; Carol A. Gomes, *in her official capacity as Chief Executive Officer of Stony Brook University Hospital*; Stony Brook University Hospital; John B. King, *in his official capacity as Chancellor of SUNY*,<br><br>      Defendants. | 2:24-cv-8407<br>(NJC) (JMW) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Susan Viola filed this action against the State University of New York ("SUNY"), Stony Brook University Hospital ("SBUH"), Carol A. Gomes, in her official capacity as Chief Executive Officer of SBUH, and John B. King, in his official capacity as Chancellor of SUNY (together "Defendants"), alleging that SBUH's termination of her employment for failure to comply with COVID-19 vaccination requirements constituted unlawful discrimination on the basis of disability and religion. (Am. Compl., ECF No. 14.) The Amended Complaint brings claims under New York State Human Rights Law ("NYSHRL") § 296 ("Section 296") alleging that Defendants subjected Viola to disparate treatment on the basis of her disability, failed to provide her with reasonable accommodations for a disability that prevents her from being vaccinated against COVID-19, and retaliated against Viola by terminating her employment (together, "NYSHRL Claims"). (Am. Compl. ¶¶ 79–89.) The Amended Complaint also brings the following claims under 42 U.S.C. § 1983 ("Section 1983") and various provisions of the U.S. Constitution: (1) that Defendants violated Viola's Fourteenth Amendment right to substantive

due process by infringing upon her fundamental right to deny medical treatment; (2) that Defendants violated the Supremacy Clause by failing to provide Viola a religious exemption from the COVID-19 vaccination requirement for healthcare workers even though federal law recognizes such exemptions; and (3) that Defendants violated Viola's First Amendment right to free exercise of religion by enforcing the COVID-19 vaccination requirement.

Before me is Defendants' Motion to Dismiss all claims in the Amended Complaint with prejudice. Defendants argue that the Amended Complaint should be dismissed with respect to SUNY, Gomes, and King due to Viola's failure to serve summonses upon them as required for this Court to exercise personal jurisdiction. Defendants also argue that all claims are barred by the Eleventh Amendment doctrine of sovereign immunity and are otherwise rendered moot because the COVID-19 vaccine mandate upon which the claims are premised has since been repealed. In the alternative, Defendants contend that all federal claims must be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and that I should decline to exercise jurisdiction over the NYSHRL claims under 28 U.S.C. § 1367(c).

For the reasons explained below, Defendants' Motion to Dismiss the Amended Complaint is granted in its entirety. Despite filing the Amended Complaint on April 16, 2025, which added SUNY, Gomes, and King as Defendants in this action, Viola has yet to serve summonses upon them, warranting dismissal of all claims against them under Rule 12(b)(2) and 12(b)(5). However, even if Viola had served SUNY, Gomes, and King, her claims against all Defendants are nonetheless barred under the doctrine of Eleventh Amendment sovereign immunity. SBUH and SUNY have long been held to fall within the ambit of New York's sovereign immunity, and Viola's claims against Gomes and King in their individual capacities do

2

not fall within the narrow exception set forth in *Ex parte Young* for prospective relief claims against state officers acting in their official capacities. Furthermore, the challenged vaccine mandate has been repealed, which renders Viola's claims for prospective relief moot. As a result, the claims in the Amended Complaint are dismissed without prejudice in their entirety under Rule 12(b)(1) for lack of subject matter jurisdiction. Moreover, in the alternative, even if the claims are not barred by virtue of lack of personal jurisdiction, sovereign immunity, and mootness, the Amended Complaint still fails to state federal claims for relief under Section 1983 and the First and Fourteenth Amendments and the Supremacy Clause of the U.S. Constitution, and I decline to exercise supplemental jurisdiction over any state law claims.

As such, the Amended Complaint is dismissed in its entirety. Because all claims are dismissed for lack of subject matter jurisdiction, the Amended Complaint is dismissed without prejudice and with leave to refile in state court.

## FACTUAL BACKGROUND

For purposes of resolving the pending Motion, I accept as true the factual allegations in the Amended Complaint and draw all reasonable inferences in Viola's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). In resolving a motion to dismiss, a court may consider documents that are attached or integral to the complaint or incorporated by reference in it, or otherwise are the subject of judicial notice. *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

Viola was hired by SBUH in 2008 and worked there until her termination on December 6, 2021. (Am. Compl. ¶¶ 1–2, 25.) During the latter years of Viola's employment, the emergence of the COVID-19 pandemic led to the enactment of state public health regulations to help mitigate the spread of the virus. (*See id*. ¶ 3.) On August 26, 2021, the New York Department of

3

Health adopted an emergency rule set forth in N.Y. Comp. Codes R. & Regs. Tit. 10 § 2.61 (2021) (repealed Oct. 4, 2023) ("Section 2.61"), which required hospitals, nursing homes, adult care facilities, and other covered healthcare facilities to "continuously require" certain employees to be fully vaccinated against COVID-19 beginning on September 27, 2021. *See* Am. Compl. ¶¶ 3–4, 63; *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274–76 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (providing background on Section 2.61). Under Section 2.61, any employee who would otherwise be required to be vaccinated against COVID-19 could seek a medical exemption from the vaccine mandate "[i]f any licensed physician, physician assistant, or certified nurse practitioner certifie[d] that immunization with COVID-19 vaccine is detrimental" to the individual's health. Section 2.61(d)(1); *see also* Ex. 1, Am. Compl, ECF No. 14-1. Section 2.61 did not, however, include an exemption from its mandate on the basis of religious beliefs. Prior to and after the issuance of the vaccine mandate, Viola complied with other COVID-19 mitigation protocols, including social distancing, wearing a mask, and getting tested for the coronavirus on a weekly basis. (Am. Compl. ¶¶ 45, 50.)

On September 1, 2021, Viola filed a letter with SBUH's Office of Equity and Access requesting a "religious exemption from any covid vaccine" on the basis of her sincerely held religious beliefs. (Ex. 3 ("EA Letter"), Am. Compl., ECF No. 14-3.) In the letter, Viola provides an overview of the tenets of her Christian faith, a history of her religious education, and quotations from the Bible to argue that the vaccine mandate violates her religious beliefs, concluding, "I cannot accept something with which I disagree in order to keep my job, travel, or attend social events, etc." (*Id*.) The letter also contains a section called "LEGAL." (*Id*. at 4.) In this section, Viola asserts that there is no evidence that she poses a direct threat to others, that a denial of her requested accommodations would be unlawful, that "Title VII of the U.S. Civil

4

Rights Act Prohibits Religious Discrimination," and that her "religious rights and [her] right to privacy are protected by the U.S. Constitution and the Constitution of this State [New York]." (*Id*.) In the letter, Viola requested that SBUH provide the following accommodations:

> My request for accommodation is that I do not consent to getting a covid vaccine, taking more frequent covid tests than vaccinated employees or wearing a mask, shield or other face covering, or any form of PPE in areas or situations in which vaccinated employees are not required to wear them. I participate normally in all duties, responsibilities, activities and events without any form of discrimination, harassment, intimidation, separation or segregation.

(*Id*.) SBUH denied her request for these specific accommodations. (Am. Compl. ¶ 76.)

On October 22, 2021, Jennifer Robinson, a physician assistant, wrote a letter detailing Viola's underlying health conditions and sensitivities to certain medications. (*Id*. ¶ 37; Ltr. ("PA Letter"), Ex. B, Am. Compl., ECF No. 14-2.) Based on Viola's underlying health and medication concerns, Robinson recommended that "it would not be in [Viola's] best interest to receive the Covid 19 vaccination at this time due to the probability of allergic reaction." (PA Letter.) On a date not identified in the Amended Complaint, Viola subsequently filed for an accommodation request to be exempted from Section 2.61's vaccination requirement, but SBUH denied the request without explanation and instead "harassed [Viola] to comply with the mandate." (Am. Compl. ¶¶ 40–42, 46.) SBUH did not "engage in any sort of interactive process with [Viola] to determine whether [it] could reasonably accommodate" her. (*Id*. ¶ 47.)

On November 5, 2021, Viola was served with a Notice of Discipline, which proposed the termination of her employment at SBUH. (*Id*. ¶ 20; Notice of Termination ("Termination Letter"), ECF No. 14-4.)[1] Subsequently, on December 6, 2021, Viola received a Notice of

---

[1] The Amended Complaint does not describe or attach the Notice of Discipline or describe its contents.

Termination letter, which terminated her employment and noted that Viola did not timely appeal the Notice of Discipline. (Am. Compl. ¶ 20; Termination Letter.)

## PROCEDURAL HISTORY

Viola commenced this litigation by filing a Complaint on January 6, 2024. (Compl., ECF No. 1.) Initially, Viola brought claims only against SBUH. (*Id*.) Summons was issued by the Clerk of Court with respect to SBUH on January 27, 2025 (ECF No. 6), and Viola filed the executed summons on the docket on February 13, 2025 (ECF No. 7.) On March 3, 2025, SBUH filed a pre-motion letter seeking a conference ahead of its anticipated motion to dismiss the Complaint. (ECF No. 9.) On March 4, 2025, I issued an order waiving the pre-motion conference requirement and set a briefing schedule governing SBUH's anticipated motion to dismiss. (Elec. Order, Mar. 4, 2025.) In the scheduling order, I noted that after SBUH served its motion to dismiss on Viola, Viola could file an amended complaint. (*Id*.) I further noted that it was "unlikely that [Viola] will have any further opportunity to amend." (*Id*.)

On April 16, 2025, Viola filed her Amended Complaint. (Am. Compl., ECF No. 14.) In her Amended Complaint, Viola added claims against the State University of New York, Carol A. Gomes, in her official capacity as Chief Executive Officer of Stony Brook University Hospital, and John B. King, in his official capacity as Chancellor of SUNY. (*Id*.) The Amended Complaint seeks the following forms of relief:

- (1) an order declaring that the acts and practices alleged in the Amended Complaint violate the NYSHRL;

- (2) an order declaring that Defendants aided and abetted religious discrimination in violation of the NYSHRL and violated Viola's constitutional rights under the First Amendment, Fourteenth Amendment, and Supremacy Clause of the U.S. Constitution;

- (3) an order requiring Gomes and King to reinstate Viola to her former position with full seniority and with no break in service, status, retirement credits, salary increments, bonuses, and benefits, to place her in the position in which she would be as if the

6

requested accommodations had never been denied, and removing all negative employment charges against her arising from her refusal to get vaccinated against COVID-19;

- (4) an award of ancillary damages for Viola's lost wages, including back pay, front pay, overtime, salary increases, benefits, and retirement credits;

- (5) compensatory damages;

- (6) nominal damages;

- (7) punitive damages on the account of Defendants' alleged intentional disregard or reckless indifference to Viola's statutory rights;

- (8) pre and post-judgment interest on any amount awarded to Viola at the highest rates and earliest dates allowed by law;

- (9) attorneys' fees and costs;

- (10) and any other relief this Court deems just and proper.

(Am. Compl. at 23–24.)

On April 25, 2025, Defendants filed a Motion to Dismiss the Amended Complaint (the "Motion"), seeking dismissal of all claims for various reasons, including insufficient service of process and lack of personal jurisdiction under Rule 12(b)(2) and (5), lack of subject matter jurisdiction under Rule 12(b)(1), and failure to state a claim under Rule 12(b)(6). (Mot., ECF No. 17; Mem. in Supp. of Mot. ("Mem."), ECF No. 17-4). Viola opposed the Motion on June 13, 2025. (Mem. in Opp. ("Opp."), ECF No. 22.) Defendants filed their reply brief on June 23, 2025. (Reply, ECF No. 23.)

On June 11, 2025, Viola filed proposed summonses for Gomes, King, and SUNY. (ECF Nos. 18–20.) On June 13, 2025, the Clerk of Court filed a notice on the docket informing Viola that the summonses were not issued with respect to Gomes, King, and SUNY because Viola did not file the proposed summonses on the proper form. (Elec. Order, Jun. 13, 2025.) The Order instructed Viola to "correct and resubmit using [the] Proposed Summons/Civil Cover Sheet."

7

(*Id*.) Viola still has not resubmitted her proposed summonses, and thus summonses have not yet been served on Gomes, King, and SUNY.

## LEGAL STANDARDS

### I.        Rule 12(b)(1)

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Russo v. United States*, No. 22-1869, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (citing *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."). When a party raises a facial challenge to the court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing a

8

facial challenge to standing, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441–42 (2d Cir. 2022) (quoting *Tandon*, 752 F.3d at 243). When the extrinsic evidence "reveals the existence of factual problems," the plaintiff "will need to come forward with evidence controverting that presented by the defendant" regarding standing. *Lugo*, 114 F.4th at 87. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57–58.

## II.    Rule 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023). "Therefore, to survive a motion to dismiss based on lack of personal jurisdiction and insufficient service of process" pursuant to Rule 12(b)(5), Fed. R. Civ. P., "the plaintiff must demonstrate that she adequately served the defendants." *Id.* In doing so, the "plaintiff bears the burden of establishing that service was sufficient." *See Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir.

9

2005)). However, a defendant waives their right to contest service of process if the defense is not raised by a responsive pleading, or, if by "submission through conduct," the defendant "leads the plaintiff to believe that service was adequate." Fed. R. Civ. P. 12(h)(1); *Buon*, 65 F.4th at 74.

When deciding a Rule 12(b)(5) motion, the Court considers whether the "plaintiff has complied with Rule 4, Fed. R. Civ. P., which governs the content, issuance and service of a summons," and "must look to matters outside the complaint to determine whether it has jurisdiction." *Grp. One Ltd. V. GTE GmbH*, 523 F. Supp. 3d, 323, 332 (E.D.N.Y. 2021). The Court also considers the timeliness of service, which is governed by Rule 4(m). Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4.

### III.   Rule 12(b)(6)

To avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that

10

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

Viola's claims against Defendants suffer from numerous defects, which require dismissal of all claims under various rules of the Federal Rules of Civil Procedure. As a threshold matter, Viola lacks standing to pursue declaratory or injunctive relief for any claims because the Amended Complaint does not allege that she continues to sustain an injury from Section 2.61 or that any injury from the vaccine mandate is certainly impending in light of the repeal of Section 2.61 in 2023 and the fact that there is no longer a COVID-19 pandemic.

Furthermore, all claims are barred under the doctrine of Eleventh Amendment sovereign immunity. Neither SBUH nor SUNY have waived their sovereign immunity for the state or federal claims at issue in this action, and therefore both Defendants are immune from Viola's claims here. Similarly, the claims against King and Gomes in their individual capacities are barred under the Eleventh Amendment because, in light of the repeal of Section 2.61 and the recession of the COVID-19 pandemic, the Amended Complaint fails to allege any *ongoing* violations of federal law, which renders the *Ex parte Young* exception to sovereign immunity inapplicable to the claims against King and Gomes. For the same reasons, Viola's claims challenging the constitutionality of Section 2.61 are moot because there is no ongoing violation

11

of federal law that can be meaningfully remedied through an order of prospective relief. Furthermore, contrary to Viola's contentions, the voluntary cessation exception to mootness does not apply here because there is no reasonable expectation that Section 2.61 will be reenacted, and the revocation of Section 2.61 has completely eradicated the effects of the alleged violation. Accordingly, the Amended Complaint must be dismissed without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1).

In addition, the Amended Complaint's claims against King, Gomes, and SUNY are dismissed without prejudice due to Viola's failure serve summonses upon them, which in turn deprives this Court of personal jurisdiction over these Defendants. Indeed, nearly one year has passed since Viola filed her Amended Complaint but she has nonetheless failed to effectuate service, despite the fact that Defendants have raised her failure to serve King, Gomes, and SUNY as a basis for dismissal in their Motion. Accordingly, the claims against King, Gomes, and SUNY are also dismissed under Rule 12(b)(2) and (5).

However, even if all claims in the Amended Complaint were not barred for the aforementioned reasons, the Amended Complaint nonetheless fails to plausibly state any federal claim for relief, and I decline to exercise supplemental jurisdiction over the NYSRHL claims under 28 U.S.C. § 1367(c). With respect to the Fourteenth Amendment substantive due process claims, it is well established that the U.S. Constitution does not recognize any fundamental right to refuse vaccination requirements imposed during a public health emergency. Accordingly, rational basis review applies to these claims, and under Second Circuit precedent, Section 2.61 survives such review because it is reasonably related to a legitimate state interest. Moreover, the Supremacy Clause claims must be dismissed for failure to state a claim because the Supremacy Clause does not support a private right of action. Finally, the free exercise claims are implausible

because the Amended Complaint alleges in a conclusory fashion, without any supporting factual allegations, that Section 2.61 was not neutral or generally applicable. Accordingly, to the extent that any federal claims survive the Rule 12(b)(1), (2), and (5) analysis, all federal claims are dismissed with prejudice under Rule 12(b)(6) for failure to state a claim, and I decline to exercise supplemental jurisdiction over any NYSHRL claims.

## I.    Article III Standing

In a footnote, Defendants briefly argue that Viola does not have Article III standing with respect to her federal claims because her alleged injuries are not traceable to, or redressable by, Defendants because they did not "create[] the mandate in § 2.61, and none have ever had the power to revoke or ignore it." (Mem. at 12 n.4 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).) Viola did not oppose or otherwise address Defendants' argument. (*See* Opp.)

Courts have "an independent duty to consider" questions of subject-matter jurisdiction. *Doe v. McDonald*, 128 F.4th 379, 384 (2d Cir. 2025); *Williams v. Harry's Nurses Registry, Inc.*, No. 24-34, 2025 WL 842041, at *2 (2d Cir. Mar. 18, 2025) (summary order) (citing *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009)). Accordingly, I consider whether Viola has standing with respect to her federal claims.

Article III of the Constitution "limits the federal judicial power to deciding 'Cases' and 'Controversies.'" *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing U.S. Const. art. III § 2). A case or controversy only exists when the plaintiff has "standing" to sue because they have "a personal stake in the outcome of the litigation." *Id.* (citing *United States v. Texas*, 599 U.S. 670 (2023)). In order to establish Article III standing, a plaintiff must show: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to Defendants'

challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision." *Soule*, 90 F.4th at 45 (citing *Spokeo, Inc.*, 578 U.S. at 338). A "plaintiff must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)).

The Amended Complaint alleges facts to support Viola's standing to seek damages for claims under the NYSHRL, the First and Fourteenth Amendments, and the Supremacy Clause. The Amended Complaint alleges that Viola has suffered an injury in fact that is traceable to Defendants' alleged conduct—the termination of Viola's employment at SBUH on December 6, 2021. Am. Compl. ¶ 77; *see Soule*, 90 F.4th at 45. If Viola were to prevail on her claims, the requested damages would likely redress her injury by providing compensation for alleged harms and, with respect to punitive damages, by deterring future alleged unlawful conduct. *See id.* at 47 ("To satisfy the redressability element of Article III standing, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision.'") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Defendants' argument that Viola's injuries are not traceable to them because they did not have power to revoke or ignore Section 2.61's mandate is unpersuasive. (Mem. at 12 n.4.) While it is true that Defendants could not unilaterally revoke or ignore Section 2.61, they nonetheless had discretion to afford Viola a medical exemption or religious accommodation from Section 2.61's requirements. *See We The Patriots USA, Inc.*, 17 F.4th at 274 (2d Cir. 2021) ("Section 2.61 exempts from the vaccination requirement 'personnel' for whom 'immunization with COVID-19 vaccine is detrimental to health based upon a pre-existing health condition' as more specifically defined and limited by the Rule."); *id.* at 292 ("Section 2.61 . . . does not prevent

14

employees from seeking a religious *accommodation* allowing them to continue working consistent with the Rule, while avoiding the vaccination requirement." (emphasis in original)).

The Amended Complaint fails, however, to allege any facts that support Viola's standing to seek injunctive or declaratory relief for any claims. Most significantly, it does not allege that Viola continues to sustain any injury, or that an injury is "certainly impending" due to Defendants' alleged unlawful conduct. *See Soule*, 90 F.4th at 46 ("[A]n injury is actual or imminent if it has actually happened or is certainly impending."). The Amended Complaint does not allege that, at any point after the termination of her employment, Viola asked Defendants for the opportunity to rejoin SBUH or applied to work at SBUH in any capacity. Moreover, Section 2.61 has been repealed, 45 N.Y. Reg. 22 (Oct. 4, 2023), and the Amended Complaint does not allege that Defendants maintain the same or a similar COVID-19 vaccination requirement for employees in the role Viola performed prior to her termination or that Defendants would deny a request for medical exemption or religious accommodation from any such policy.

This case is therefore similar to *Dorce*, 2 F.4th 82, where the Second Circuit affirmed the dismissal of injunctive and declaratory relief claims due to plaintiffs' failure to allege ongoing or future harm that would support Article III standing. *Id.* at 88. In *Dorce*, the plaintiffs challenged a local law that authorized New York City to transfer ownership of foreclosed properties "free of charge to designated partners, who develop and manage the properties" and sought a declaration that the local law was unconstitutional. *Id.* at 87–88, 95. Although the plaintiffs alleged that properties they had owned had been foreclosed upon in rem and transferred to a third party pursuant to this local law, they failed to "demonstrate[] that they will be subject to future harm" because they "could not show that they owned property that was likely to be transferred in the

15

future" under the law. *Id.* at 91, 93, 95. Thus, while the plaintiffs had alleged past harms, the Second Circuit held that they lacked standing to seek injunctive or declaratory relief. *Id.* at 88.

Like the *Dorce* plaintiffs, Viola alleges she was injured in the past by Defendants' challenged conduct—specifically, the Defendants' decision to terminate her employment—but has not alleged any current injury or facts supporting the conclusion that she faces a substantial risk of future injury or that any future injury is certainly impending. *See id.* at 95 (quoting *Susan B. Anthony List*, 573 U.S. 149, 158 (2014)) ("Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.").

The Amended Complaint alleges that due to Defendants' alleged disability discrimination, failure to accommodate, and retaliation under the NYSHRL, Viola "suffered mental anguish and humiliation . . . ." (Am. Compl. ¶ 80; *see also id.* ¶¶ 87, 90.)  However, "[t]he emotional consequences of a prior act" are "simply . . . not a sufficient basis for [equitable relief] absent a real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 (1983).

The Amended Complaint also alleges that due to Defendants' violation of the Supremacy Clause and Viola's free exercise rights, Viola "suffered lost employment, wages, reputational damages, and emotional distress, entitling her to . . . injunctive relief (reinstatement, expungement) against [Gomes and King]." (Am. Compl. ¶ 132; *see also id.* ¶ 123.) But because the Amended Complaint does not allege that Viola has sought reemployment with Defendants, any allegation that she is entitled to future income, compensation, and benefits is purely speculative and does not support standing to seek injunctive or declaratory relief.

16

Finally, Viola seeks a declaration that Defendants' past conduct was unlawful "in violation of the NYSHRL," that Defendants "aided and abetted religious discrimination in violation of the NYSHRL and violated [Viola's] Constitutional Rights provided by the First Amendment and the Supremacy Clause," and that Defendants "violated [Viola's] liberties protected by the Fourteenth Amendment[.]" (Am. Compl. at 23–24.) However, declaratory relief is prospective in nature, and Article III standing to seek such relief must be based on allegations of current or future harm. *See, e.g.*, *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021). Because the Amended Complaint fails to plausibly allege that Viola continues to be injured, that there is a substantial risk that future injury will occur, or that she faces threatened injury that is certainly impending, it fails to show that Viola has Article III standing to sue for declaratory relief on any of her claims. *See Dorce*, 2 F.4th at 95.

Viola's declaratory and injunctive relief claims are therefore dismissed without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1). *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 191, 198 (2d Cir. 2005); *Plante v. Dake*, 621 F. App'x 67, 69 (2d Cir. 2015); *see also Greene v. Northwell Health Inc.*, No. 23-cv-4846, 2024 WL 4287875, at *7–9 (E.D.N.Y. Sept. 25, 2024) (dismissing claims challenging the Section 2.61 vaccine mandate for lack of subject matter jurisdiction where the complaint failed to plausibly allege current injury or a substantial risk of future injury, or that plaintiff faced threatened injury that is certainly impending due to repeal of the vaccine mandate and recession of COVID-19 pandemic); *Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 202–04 (E.D.N.Y. 2025) (same).

17

## II.    Dismissal Under Rule 4(m) and 12(b)(5)

Defendants SUNY, Gomes, and King move to dismiss the Amended Complaint for insufficient service of process under Rule 4, Fed. R. Civ. P., on the basis that summonses were neither issued nor served upon them.[2] (Mem. at 6.) In opposition, Viola does not contest that SUNY, Gomes, and King had not yet been served with summonses. (Opp. at 13.) Rather, Viola argues that when she filed her opposition on June 13, 2025, she was still within the time in which service could be timely accomplished and that she "intends to serve Defendants within the next two weeks." (*Id*.) While that was true on June 13, 2025, as of June 8, 2026, summonses still have not been served upon SUNY, Gomes, and King. As such, the dismissal of SUNY, Gomes, and King from this action is appropriate under Rules 4(m), 12(b)(5), and 12(b)(2).[3]

---

[2] While Defendants argue that the Amended Complaint must be dismissed for insufficient service of process under Rule 4, Rule 12(b)(5) governs a motion to dismiss a pleading for insufficient service of process.

[3] Although Defendants do not invoke Rule 12(b)(2), Fed. R. Civ. P., which permits a motion to dismiss for lack of personal jurisdiction, they also seek to dismiss the Amended Complaint with respect to SUNY, Gomes, and King for failure to obtain personal jurisdiction. (Mem. at 7.) Defendants' arguments on this point mirror their arguments for dismissal under Rule 4—namely, that SUNY, Gomes, and King were never served. A court cannot exercise personal jurisdiction over a defendant unless "the procedural requirement of service of summons [is] satisfied." *Buon*, 65 F.4th at 73. Therefore, although a Rule 12(b)(5) motion is the "proper procedural vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint," a dismissal for lack of service of process is also a dismissal for a lack of personal jurisdiction under Rule 12(b)(2). *Tevdorashvili v. Qatar Airway*, No. 24-cv-1379, 2024 WL 4955260, at *2 (E.D.N.Y. Dec. 3, 2024) ("Though Defendant frames his motion as a motion to dismiss for lack of personal jurisdiction pursuant to 12(b)(2), it can also be classified as a motion to dismiss under Rule 12(b)(5).").

Accordingly, I also dismiss the Amended Complaint without prejudice with respect to SUNY, Gomes, and King for lack of personal jurisdiction under Rule 12(b)(2). *See Smith v. United States*, 554 F. App'x 30, 32 (2d Cir. 2013) ("[A] dismissal for want of personal jurisdiction is without prejudice.") (summary order); *see also Vanek v. Samsung EMS Co.*, No. 23-cv-3127, 2024 WL 4894344, at *2 (S.D.N.Y. Nov. 26, 2024) ("[A] dismissal based on lack of proper service or lack of personal jurisdiction is a dismissal without prejudice.").

18

Rule 4 sets forth the procedural requirements governing the contents, issuance, and proper service of summons. It provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must dismiss the action without prejudice* against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4 (emphasis added).

Here, Viola filed the Amended Complaint on April 16, 2025, which added SUNY, Gomes, and King as Defendants in this action. Under Rule 4(m), Viola had 90 days—until July 15, 2025—to serve the summonses on the newly added defendants. By the time Defendants filed their motion to dismiss the Amended Complaint for insufficient service of process on April 25, 2025, Viola still had 81 days to serve the summonses, and she accordingly argued that dismissal for failure to serve SUNY, Gomes, and King was premature. (Opp. at 13.) On June 11, 2025, Viola filed proposed summons for SUNY, Gomes, and King to be issued by the Clerk of Court for the Eastern District of New York. (ECF Nos. 18, 19, 20.) However, on June 13, 2025, the Clerk of Court issued an electronic order noting that the proposed summonses were not issued because they were improperly filled out and ordered Viola to correct and resubmit them using the proper forms. (Elec. Order, Jun. 13, 2025.) Nearly one year has passed since then, but Viola still has not filed corrected summonses with the Clerk of Court or otherwise served them, much less shown that she met the July 15, 2025 service deadline. Viola has also neglected to request an extension of time to complete service or to otherwise show "good cause for [her] failure" to serve SUNY, Gomes, and King, which would have prompted this Court to "extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). In so doing, Viola has exhibited "a

19

complete disregard for the requirement that a summons be served." *Osrecovery, Inc. v. One Grp. Int'l, Inc.*, 234 F.R.D. 59, 61 (S.D.N.Y. 2005).

Accordingly, the motion to dismiss the Amended Complaint by SUNY, King, and Gomes for failure to properly effectuate service is granted under Rules 4(m) and 12(b)(5), and the claims against them are dismissed without prejudice. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court must dismiss the action *without prejudice* against that defendant or order that service be made within a specified time."); *see also In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 431–32 (S.D.N.Y. 2009) ("Absent perfected service, a court lacks jurisdiction to dismiss an action with prejudice; therefore dismissal pursuant to Rule 12(b)(5) must be without prejudice.").

### III.    Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Though not set forth in the text, the Eleventh Amendment also bars "suits in federal court against a state brought by that state's own citizens." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 151 (2d Cir. 2013). It also applies not just to lawsuits filed in federal court against states themselves, but also to "certain actions against state agents and instrumentalities . . . ." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)); *see also Mary Jo C.*, 707 F.3d at 151–52 (same). An entity "asserting Eleventh Amendment immunity . . . bear[s] the burden of demonstrating entitlement." *Leitner*, 779 F.3d at 134.

Under the sovereign immunity doctrine, as a general rule, entities shielded from suit "may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). The Eleventh Amendment thus "generally bars suits in federal court" against "non-consenting states." *Leitner*, 779 F.3d at 134. Eleventh Amendment sovereign immunity applies not just to lawsuits filed in federal court against states themselves, but also to state officials acting in their official capacities. *See Chris H. v. New York*, 740 Fed. App'x 740, 741 (2d Cir. 2018) ("The Eleventh Amendment bars damages actions in federal court against a state and against state officials acting in their official capacities, unless the state waives sovereign immunity or Congress abrogates it.") (summary order). This bar applies to suits in federal court against a state and its agents, "regardless of the nature of the relief sought." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023), *cert. denied*, No. 22-1130, 2024 WL 674658 (U.S. Feb. 20, 2024); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim."); *see also Siani v. State Univ. of New York at Farmingdale*, 7 F. Supp. 3d. 304, 316 (E.D.N.Y. 2014) ("[The] Eleventh Amendment bars all suits against states in federal court based on state law, regardless of the relief sought."). Accordingly, absent a waiver by the state or abrogation of sovereign immunity by Congress, states and their agents and instrumentalities are immune from actions in federal court seeking monetary damages or injunctive relief, *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001), as well as declaratory relief, *Ashmore v. Prus*, 510 F. App'x 47,

21

48 (2d Cir. 2013) (citing *Pennhurst*, 465 U.S. at 100–01); *see also Manners v. New York*, 175 F.3d 1008, 1999 WL 96136 at *1 (2d Cir. 1999) (summary order).

Notwithstanding the Eleventh Amendment bar against actions in federal court against states and their agents and instrumentalities, the Supreme Court has established "a well-known exception to this rule" in *Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, a plaintiff may bring a claim for "prospective relief against an individual acting in his official capacity . . . to end an ongoing violation of a federal law." *T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 91 (2d Cir. 2024); *see also W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) ("[*Ex parte Young*] allows a suit for injunctive or declaratory relief challenging the constitutionality of a state official's actions in enforcing state law."). The *Ex parte Young* exception applies to a claim against a state official when "the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *T.W.*, 110 F.4th at 91. It does not extend to suits against state agencies. *See Deadwiley v. New York State Off. of Child. & Fam. Servs.*, 97 F. Supp. 3d 110, 116 (E.D.N.Y. 2015) (holding that sovereign immunity barred a suit seeking injunctive relief against a New York state agency).

However, if a claim against a state official seeks "declaratory relief that would have the same effect as an award of damages against the state," the *Ex parte Young* exception does not apply. *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)); *see also T.W.*, 110 F.4th at 93 ("[A] declaratory judgment is not available when the result would be a partial 'end run' around the Eleventh Amendment's bar on retrospective awards of monetary relief.").

22

Applying these standards, Viola's claims against SUNY and SBUH are barred by the

Eleventh Amendment. Furthermore, her claims against Gomes and King are also barred by the

Eleventh Amendment and do not fall under the *Ex Parte Young* exception because the Amended

Complaint fails to allege an ongoing violation of federal law.

### A. Claims Against SUNY and SBUH

Defendants argue that all claims against SUNY and SBUH, whether the NYSHRL claims

or the federal constitutional claims, are barred under the Eleventh Amendment because these

state entities are immune from suit and have not waived sovereign immunity in this action.

(Mem. at 8–11.) Viola did not address or otherwise oppose this argument. (*See* Opp.) In so

doing, she abandoned all claims against SBUH and SUNY. *See Farag v. XYZ Two Way Radio

Serv., Inc.*, No. 22-cv-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4, 2023) ("In a 'counseled'

case, 'a court may, when appropriate, infer from a party's partial opposition that relevant claims

or defenses that are not defended have been abandoned.'") (quoting *Jackson v. Fed. Express*, 766

F.3d 189, 198 (2d Cir. 2014)); *AJ Energy LLC v. Woori Bank*, No. 18-cv-3735, 2019 WL

4688629, at *7 (S.D.N.Y. Sept. 26, 2019) ("It is well established that a district court may, and

generally will, deem a claim abandoned when a counseled plaintiff fails to respond to a

defendant's arguments that the claim should be dismissed." (cleaned up) (citing cases)), *aff'd*,

829 F. App'x 533 (2d Cir. 2020) (summary order).

Even if Viola had not abandoned these claims, it is well-established that both SUNY and

SBUH are immune from claims in federal court under the Eleventh Amendment. *See Bamba v.

Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018) ("Stony Brook and SBUH . . . are part of the State

University of New York ('SUNY') system, which is an integral part of the New York State

government; thus, when either is sued, New York State is the true party for Eleventh

23

Amendment purposes and sovereign immunity applies."); *Gasparik v. Stony Brook Univ.*, 296 F. App'x 151, 152 (2d Cir. 2008) ( "[T]he District Court properly concluded that it lacked subject matter jurisdiction because SUNY has not consented to be sued in a federal forum and so is immune from suit pursuant to the Eleventh Amendment."); *Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990) ("For Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party."); *Fariello v. Rodriguez*, 148 F.R.D. 670, 681 (E.D.N.Y. 1993), *aff'd*, 22 F.3d 1090 (2d Cir. 1994) (holding that "the Stony Brook University Hospital is an entity of the State of New York and . . . under the provisions of the Eleventh Amendment to the Constitution, this action is barred in federal court").

Furthermore, "42 U.S.C. § 1983 does not constitute an exercise of [Congress's authority to abrogate sovereign immunity]" and thus federal constitutional claims brought under Section 1983 are "proscribed by the Eleventh Amendment" absent the state's consent to be sued. *Dube*, 900 F.2d at 594. Similarly, "Congress has not abrogated, and New York has not waived, its sovereign immunity from claims brought under . . . NYSHRL[.]" *Iwelu v. New York State Off. of Mental Health*, No. 22-3096, 2024 WL 2175938, at *2 (2d Cir. May 15, 2024); *see also Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) ("In addition, New York State has not consented to be sued in federal court under the NYSHRL.").

Here, neither SUNY nor SBUH has waived its sovereign immunity defense in this action, as both Defendants invoked sovereign immunity in the Motion to Dismiss. (Mem. at 8–11.) Accordingly, all claims against SUNY and SBUH are barred by the Eleventh Amendment and dismissed without prejudice under Rule 12(b)(1). *See Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ("The doctrine of sovereign immunity is jurisdictional in nature."); *Morales v.*

24

*New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014) ("A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction."); *Karupaiyan v. New York*, No. 23-1257, 2024 WL 2174272, at \*2 (2d Cir. May 15, 2024), *cert. denied*, 145 S. Ct. 271 (2024) ("When subject matter jurisdiction is lacking, the district court lacks the power to adjudicate the merits of the case, and accordingly Article III deprives federal courts of the power to dismiss the case with prejudice.").

### B. Claims Against Gomes and King

With respect to the claims against Gomes and King in their official capacities for declaratory and injunctive relief, Defendants argue that these claims are also barred because Viola complains only of "past conduct, and has no need for prospective injunctive relief to address any ongoing violation of federal law." (Mem. at 10.) Viola contends that notwithstanding the termination of her employment, she is seeking prospective relief for ongoing violations of her Fourteenth Amendment rights by seeking an injunction requiring her reinstatement. (Opp. at 14–15.)

The Amended Complaint fails to allege any ongoing violations of federal law, and accordingly, the claims against Gomes and King do not fall under *Ex parte Young* and are thus barred by the Eleventh Amendment. The *Ex parte Young* exception only applies to claims against state officials when "the complaint (1) alleges an *ongoing* violation of federal law; and (2) seeks relief properly characterized as prospective." *T.W.*, 110 F.4th at 91 (emphasis added). Even if a plaintiff "alleges ongoing *harm*, injunctive relief under *Ex parte Young* must seek to stop ongoing *violations* of federal law." *Id*. at 94 (emphasis in original). Even when "the relief [sought by plaintiff] is prospective," declaratory and injunctive relief under *Ex parte Young* is

unavailable when it "is aimed exclusively at a *past violation*" and "does not seek to remedy an *ongoing violation* of federal law." *Id.* at 95 (emphasis in original).

Viola's constitutional claims under Section 1983 are premised on the enforcement of Section 2.61. (*See, e.g.* Am. Compl. ¶ 21 ("Plaintiff is also seeking Declaratory Relief under Article VI, Clause II of the United States [Constitution] that the New York State Covid-19 Vaccination Mandate violates the Supremacy Clause."); *id.* ¶ 22 ("Plaintiff is also alleging that The New York State Covid-19 Vaccine Mandate violates the liberty protected by the Fourteenth Amendment to the Constitution[.]"); *id.* ¶ 125 ("Defendants . . . violated Plaintiff's First Amendment right to free exercise of religion and the Supremacy Clause (U.S. Const. art. VI, cl. 2) by enforcing the [Vaccine] Mandate in conflict with Title VII and the Federal CMS Mandate.").)

However, Section 2.61 was repealed on October 4, 2023—more than one year before Viola filed this litigation on December 6, 2024. *See Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *2 (2d Cir. Dec. 20, 2024) (citing 45 N.Y. Reg. 22 (Oct. 4, 2023)). As such, the Amended Complaint fails to allege an *ongoing* violation of federal law that could be remedied through declaratory or injunctive relief. *See Wilson v. Mid-Hudson Forensic Psychiatric Ctr.*, No. 23-cv-8911, 2025 WL 1295655, at *9 (S.D.N.Y. May 5, 2025) ("[T]he *Ex parte Young* exception is inapplicable" where plaintiff did not "allege any 'ongoing violation of federal law' that the relief she seeks would remedy—particularly in light of the fact that the OMH [Vaccine] Mandate is no longer enforced."); *In re NYAHSA Litig.*, 318 F. Supp. 2d 30, 37 (N.D.N.Y. 2004), *aff'd sub nom. New York Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147 (2d Cir. 2006) (finding that "plaintiffs could obtain no meaningful prospective relief because any violation of the amendment would not be ongoing" where the amendment at issue was repealed);

26

*cf. Walker v. New York State Dep't of Health*, 788 F. Supp. 3d 427 (E.D.N.Y. 2025) (Choudhury, J.) (finding that plaintiffs could bring a claim under *Ex parte Young* where a challenged regulation "*remains in force and continues to deprive* Plaintiffs" of their rights (emphasis added)).

Accordingly, because Section 2.61 has been repealed, the Amended Complaint fails to allege an ongoing violation of federal law, and Viola's constitutional claims against Gomes and King in their official capacity for declaratory and injunctive relief fail. Further, the Amended Complaint's NYSHRL claims against Gomes and King in their official capacities for declaratory and injunctive relief are also barred under sovereign immunity because the *Ex parte Young* exception "is inapplicable in a suit against state officials on the basis of state law." *Shibeshi v. City Univ. of New York*, 531 F. App'x 135 (2d Cir. 2013), *as corrected* (Sept. 3, 2013) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

As a result, all claims under the NYSHRL and under Section 1983 and various provisions of the U.S. Constitution alleged in the Amended Complaint against all Defendants are barred under the Eleventh Amendment. These claims are therefore dismissed without prejudice. *See Karupaiyan*, 2024 WL 2174272, at *2.

## IV.  Mootness

Defendants also argue that Viola's constitutional claims are moot, in addition to being barred under the Eleventh Amendment, because they challenge the constitutionality of Section 2.61, which has been repealed. (Mem. at 11–12.) In opposition, Viola contends that the case is not moot because she was "never reinstated [to her job] and her constitutional rights remain violated." (Opp. at 14.) As a result, Viola argues she "has a legally cognizable interest in the outcome of this action." Although sparsely briefed, Viola also asserts that while "voluntary

27

cessation can moot a case," it must be "reasonably clear that the challenged practice will not happen again" and the "effects of the alleged violation must be permanently reversed." (Opp. at 14 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) and *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979).)

"While standing doctrine focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed . . . mootness doctrine ensures that a litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021). The question of mootness concerns whether, "as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury." *Id*. A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Antonyuk v. James*, 120 F.4th 941, 1014 (2d Cir. 2024). "It remains live if a court can fashion *some* form of meaningful relief to award the complaining party." *Id.* (emphasis in original). The inquiry into whether the court "can fashion some form of meaningful relief" is "more complicated in cases involving states or state agents as defendants . . . since the Eleventh Amendment bars the award of money damages against state officials in their official capacities." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022). Accordingly, for an action against states or state agents, for a case to remain live "there must be a possible effectual remedy for the violations it alleges, and the remedy must be prospective relief that would address an ongoing violation of federal law." *Id*.

In light of the repeal of Section 2.61, Viola's constitutional claims are moot because there is no ongoing violation of federal law that I can meaningfully remedy through an order of prospective relief, and the Eleventh Amendment bars an award of monetary damages. *See supra*

28

Discussion § II (A)–(B); *Exxon Mobil Corp*, 28 F.4th at 392. Indeed, under factual circumstances almost identical to those alleged in this action, in which a plaintiff brought claims for injunctive relief with respect to Section 2.61, Chief Judge Brodie of this District reached the same conclusion: "Because of the repeal of Section 2.61, Plaintiffs' claims for injunctive relief against State Defendants are moot since the Court can no longer fashion any form of meaningful injunctive relief." *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 314–15 (E.D.N.Y. 2024); *see also id.* at 315 ("[T]he Court cannot grant Plaintiffs the requested injunctive relief with respect to Section 2.61 because the alleged violation of federal law is no longer ongoing.").

Contrary to Viola's contentions, the voluntary cessation exception to the mootness doctrine is inapplicable here. "Generally, the 'voluntary cessation of allegedly illegal conduct' is not enough to render a case moot." *Exxon Mobil Corp.*, 28 F.4th at 395 (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). "Otherwise, a defendant might strategically alter its conduct in order to prevent or undo a ruling adverse to its interest." *Id*. Nonetheless, where "'there is no reasonable expectation' of the alleged violation's recurrence, and interim events have 'completely and irrevocably eradicated the effects of the alleged violation,'" courts may find that voluntary cessation of the challenged conduct may render a case moot. *Id*. (quoting *County of Los Angeles*, 440 U.S. at 631). "When a defendant claims that its voluntary cessation or compliance moots a case, the defendant 'bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

29

Here, Defendants rely on the Second Circuit's decision in *Does 1-2 v. Hochul*, which considered whether there is a reasonable expectation that a vaccination mandate similar to Section 2.61 could be reinstated and held that no such reasonable expectation exists. *See Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *2 (2d Cir. Dec. 20, 2024) ("While the State's repeal of the vaccination mandate certainly constitutes a voluntary cessation, this decision corresponded with the changed conditions surrounding the COVID-19 pandemic . . . With nothing to suggest otherwise, we cannot conclude there is a reasonable expectation that the alleged violation will recur."); *see also Abadi v. City of New York*, No. 22-1560, 2023 WL 3295949, at *1 (2d Cir. May 8, 2023) (holding that "the voluntary cessation of the COVID-19 restrictions at issue" mooted injunctive and declaratory relief claims because the vaccine mandate expired and "there is no evidence in the record that would support the conclusion that the City is likely to reinstitute any such COVID-19 restrictions"); *Marciano v. Adams*, No. 22-570, 2023 WL 3477119, at *2 (2d Cir. May 16, 2023) ("The voluntary cessation exception is likewise inapplicable because 'there is no reasonable expectation that the alleged violation will recur'. . . ." (quoting *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016)).

Moreover, the Second Circuit and district courts within the Second Circuit have also held that "Defendants' repeal of the vaccination mandate" set forth in Section 2.61 "has 'completely and irrevocably eradicated the effects of the alleged violation[.]'" *Marciano*, 2023 WL 3477119, at *2 (quoting *Am. Freedom Def. Initiative*, 815 F.3d at 109); *see also Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 434 (N.D.N.Y. 2023) ("There is no doubt that Section 2.61's repeal . . . irrevocably eradicated the effects of the alleged violation, thus satisfying the second prong of this traditional mootness analysis."); *Iosilevich v. City of New York*, No. 21-cv-4717,

30

2022 WL 19272855, at *12 (E.D.N.Y. Aug. 10, 2022) (finding that the repeal of New York City's COVID-19 vaccine mandate "completely and irrevocably eradicated the effects of the alleged violation"); *cf. Dark Storm Indus. LLC v. Hochul*, No. 20-2725, 2021 WL 4538640 (2d Cir. Oct. 5, 2021) (reversing a district court holding that plaintiff's claims against COVID-19 restrictions were not moot where governor rescinded them) (summary order).

Viola has not offered any evidence or arguments suggesting that there is any reasonable expectation that the alleged constitutional violations resulting from Section 2.61's COVID-19 vaccination mandate will recur. Furthermore, as the Second Circuit and other district courts have held, the repeal of Section 2.61 has completely and irrevocably eradicated the effects of the mandate in that healthcare workers are no longer required to be vaccinated against COVID-19. *See, e.g., Marciano*, 2023 WL 3477119, at *2; *Iosilevich*, 2022 WL 19272855, at *12. As explained above, the Amended Complaint does not allege that, at any point after the termination of her employment, Viola asked Defendants for the opportunity to rejoin SBUH or applied to work at SBUH in any capacity. Nor does she allege that Defendants continue to implement or rely upon Section 2.61. *See Am. Freedom Def. Initiative*, 815 F.3d at 109 (recognizing that a claim is moot where "the defendant's conduct has been 'sufficiently altered so as to present a substantially different controversy from the one' that existed when . . . suit was filed," and finding that standard satisfied with respect to a First Amendment claim against that MTA, which shifted its reliance on an incitement provision to a provision on advertisements that are "political in nature"). As such, she is no longer subject to Section 2.61's requirements, and its effects have been completely and irrevocably eradicated due to its repeal, the absence of any allegations suggesting that SBUH continues to implement Section 2.61, and because Viola no longer works at SBUH. *See Granite State Outdoor Advert., Inc. v. Town of Orange, Connecticut*, 303 F.3d

31

450, 451–52 (2d Cir. 2002) (holding that the effects of allegedly unconstitutional regulations were completely and irrevocably eradicated when the regulations were repealed because there was "no reason to believe that any unconstitutional restrictions are currently in place").

Accordingly, Viola's constitutional claims are moot. *See Evans v. N.Y.C. Dep't of Educ.*, No. 22-cv-7901, 2023 WL 8034449, at *4 (S.D.N.Y. Nov. 20, 2023) (finding moot a claim against the vaccine mandate after mandate was lifted); *Rivera v. City of New York*, No. 22-CV-616, 2023 WL 6385771, at *8–10 (E.D.N.Y. Sept. 30, 2023) (same); *Haczynska*, 738 F. Supp. 3d at 314–16 (same). The constitutional claims are therefore dismissed without prejudice under Rule 12(b)(1). *See Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (holding that "when a case becomes moot, the federal courts lack subject matter jurisdiction over the action" and it should be dismissed under Rule 12(b)(1)); *Conn. Citizens Def. League, Inc. v. Thody*, No. 23-724, 2024 WL 177707, at *2 (2d Cir. Jan. 17, 2024) ("Dismissal under Rule 12(b)(1) is also proper when a case becomes moot[.]") (summary order).

## V.    Failure to State a Claim

In the alternative, even if Viola's claims were not dismissed without prejudice for the reasons already addressed—i.e. standing, the failure to serve summonses upon King, Gomes, and SUNY, Eleventh Amendment sovereign immunity, and mootness—her Fourteenth Amendment substantive due process claims, Supremacy Clause claims, and First Amendment claims must be dismissed with prejudice under Rule 12(b)(6), Fed. R. Civ. P.

### A.  Fourteenth Amendment – Substantive Due Process

Defendants argue that the Amended Complaint fails to allege substantive due process claims because vaccine mandates imposed for the public interest, including Section 2.61, do not infringe upon any fundamental right, and Viola was never compelled to take the COVID-19

32

vaccine against her will. (Mem. at 13; Reply at 6.) Rather, according to Defendants, Viola was—and still is—free to refuse the vaccine. (Reply at 6.) On this basis, Defendants argue that Viola's substantive due process claims have been "repeatedly dismissed by the courts" and require dismissal. (*Id*. at 17 (citing *Goe v. Zucker*, 43 F.4th 19, 31 (2d Cir. 2022); *We The Patriots USA, Inc.*, 17 F.4th at 293; *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 81–85 (N.D.N.Y. 2022)).).

Viola argues that Section 2.61 infringed upon her fundamental right to be free from unwanted medical treatment—*not* her right to oppose a mandatory vaccine. (Opp. at 15–16.) Her argument relies on the assumption that the COVID-19 vaccine is not actually a vaccine but a "treatment" for COVID because it does not provide "sterilizing immunity . . . against infection and transmission" and only reduces the severity of the virus in infected patients. (*Id*. at 15.) Viola argues that the line of cases beginning with *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), which held there is no fundamental right that would render unconstitutional vaccine mandates during a public health emergency, are all premised on the notion that vaccines prevent infection and transmission rates of diseases, rather than simply reduce the symptoms experienced by infected people. (Opp. at 17.)

"[T]he touchstone of due process is protection of the individual against arbitrary action of government." *Goe*, 43 F.4th at 30 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). To determine whether a government regulation infringes on the right to substantive due process, the court must first "determine whether the asserted right is fundamental." *Id*. "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." *Id*. "When the right infringed is fundamental," the court applies strict scrutiny, and "the governmental regulation must be narrowly tailored to serve a compelling state interest." *Id*. When a "claimed right is not fundamental," the court

33

applies rational basis review, and the "governmental regulation need only be reasonably related to a legitimate state objective." *Id*.

It is well-established that "the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *We The People USA, Inc.*, 17 F.4th at 293; *see also Jacobson*, 197 U.S. at 25–31 (holding that a Massachusetts law requiring small pox vaccination as necessary for public health "cannot be affirmed to be, beyond question, in palpable conflict with the Constitution"); *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (holding that a substantive due process claim against to New York's mandatory vaccination requirement "is foreclosed" by *Jacobson*, 197 U.S. 11); *Bellatoni v. Lamont*, No. 23-656, 2023 WL 8889516, at *1 (2d Cir. Dec. 26, 2023) ("We have never held that, in the face of a public health emergency, the Constitution forbids vaccine mandates.") Further, Section 2.61 did not compel anyone to get vaccinated against COVID-19; instead, it required individuals who sought to continue employment at certain covered healthcare entities to be vaccinated against the coronavirus. *See We The Patriots USA, Inc.*, 17 F.4th 266, 293–94 (2d Cir. 2021) ("Although [the plaintiffs] have a hard choice to make, they do have a choice. Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers.").

Viola's argument that COVID-19 vaccines should be considered a "medical treatment" rather than as vaccines because they do not entirely prevent the transmission of the coronavirus is unpersuasive. Viola fails to provide any authority supporting her contention that in order to qualify as a "vaccine" an intervention must provide "sterilizing immunity . . . against infection and transmission" rather than reducing the severity of the virus in infected patients. (Opp. at 15.) Moreover, the Second Circuit has made clear that "weighing scientific evidence and the

34

effectiveness of vaccines is the role of state policymakers" not private litigants who object to the vaccine. *Bellatoni*, 2023 WL 8889516, at *1; *see also Phillips*, 775 F.3d at 542 (2d Cir. 2015) ("Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* [*v. Massachusetts*, 197 U.S. 11 (1905),] made clear, that is a determination for the legislature, not the individual objectors." (citing *Jacobson*, 197 U.S. at 37–38)). Accordingly, courts—including this one—have no basis to decide whether the COVID-19 vaccine is better understood to be "medical treatment" as opposed to a vaccine, as Viola suggests. (Opp. at 16.)

Additionally, Viola's contention that the *Jacobson* line of cases is premised on the understanding that vaccines must prevent disease rather than mitigate the effects of a disease is unsupported by *Jacobson* itself. *Jacobson*, 197 U.S. at 34 ("The common belief, however, is that [the smallpox vaccine] has a decided tendency to prevent the spread of this fearful disease, *and to render it less dangerous* to those who contract it.") (emphasis added). Viola's reliance on *Cruzan by Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990), for the notion that there is a fundamental right to refuse unwanted medical treatment is also misplaced. In *Cruzan*, the court affirmed *Jacobson*'s holding that "an individual's liberty interest in declining an unwanted smallpox vaccine" was outweighed by "the State's interest in preventing disease." 497 U.S. 261, 278 (1990). Accordingly, Viola has failed to identify any fundamental liberty interest on which Section 2.61 infringes.

Because Viola has failed to show that Section 2.61 infringes on any fundamental liberty interest, the propriety of Section 2.61 is subject to rational basis review. *Goe*, 43 F.4th at 30. Viola alleges that "the Vaccination Mandate has no real or substantial relation to public health or is beyond all question, a plain, palpable invasion of rights secured by the fundamental law as to

[Viola] with natural immunity." (Am. Compl. ¶ 111.) Her assertion that Section 2.61 "has no real substantial relation to public health" is based on allegations that the iteration of COVID-19 vaccines available at that time were ineffective in preventing or mitigating the effects of the "Delta variant of COVID." (*Id.* ¶¶ 98–100.)

Defendants rely upon *We The Patriots USA, Inc.*, *Goe v. Zucker*, and *Andre-Rodney v. Hochul* to argue that the Section 2.61's vaccine mandate for healthcare workers is reasonably related to a legitimate state objective. (Mem. at 13; Reply at 6–7.) In all three cases, the courts found, either on a request for preliminary relief or on the merits, that vaccine mandates did not run afoul of the Fourteenth Amendment's substantive due process protections. *See We The Patriots USA, Inc*, 17 F.4th at 293–94 (holding that plaintiffs were not "likely to succeed on the merits" of their claim that Section 2.61 violates the right to substantive due process because "this Court and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional"); *Goe*, 43 F.4th at 32 (holding that "there clearly is a legitimate state objective" for "protecting communities from serious, vaccine-preventable diseases through immunization"); *Andre-Rodney*, 618 F. Supp. 3d at (N.D.N.Y. 2022) (finding that "courts in this Circuit and around the county have concluded that vaccination requirements such as the one imposed here pass muster under rational basis review" and that plaintiffs "failed to allege that the Vaccine Mandate is not 'reasonably related' to stemming the spread of COVID-19"). In light of this authority and considering Viola's conclusory assertions regarding the efficacy of COVID-19 vaccines, the Amended Complaint fails to plausibly allege that Section 2.61 is not reasonably related to a legitimate state objective as required to state substantive due process claims.

### B. The Supremacy Clause

Defendants argue for dismissal of the Supremacy Clause claims on the basis that the Supremacy Clause does not create an independent cause of action. (Mem. at 14.) In the alternative, Defendants argue that the Supremacy Clause claims are without merit because the federal regulation on which Viola relies—86 Fed. R. 61555 at 61572 ("Federal Exemption")— only preempts state exemptions from COVID-19 vaccination requirements that are broader than federal exemptions, not exemptions that are narrower, like Section 2.61. (*Id.* (citing Federal Exemption ("[T]his [mandate] preempts the applicability of any State or local law providing for exemptions to the extent such law provides *broader* exemptions than provided for by Federal law and are inconsistent with this [mandate].").).)

Viola did not oppose Defendants' Supremacy Clause arguments. (*See* Opp.) In so doing, she has abandoned her Supremacy Clause claims. *See Farag*, 2023 WL 2770219, at *2; *AJ Energy LLC*, 2019 WL 4688629, at *7. Nevertheless, even if Viola had not abandoned these claims, they are without merit. As a preliminary matter, Defendants correctly point out that the Supremacy Clause does not supply an independent cause of action. *See We The Patriots USA, Inc.*, 17 F.4th at 291 n.32 ("Although . . . Plaintiffs style their preemption claim as a challenge brought pursuant to the Supremacy Clause, the Supreme Court has held that the Supremacy Clause does not create an independent cause of action."); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) ("[T]he Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action. It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so.") (internal quotation marks and citations omitted).

Further, Viola alleges that Section 2.61 conflicts with the Federal Exemption because Section 2.61 does not provide exemptions on the basis of sincerely held religious beliefs, whereas the Federal Exemption does. *See* Am. Compl. ¶¶ 66–70; Federal Exemption ("Accordingly, we require that providers and suppliers included in this [mandate] establish and implement a process by which staff may request an exemption from COVID–19 vaccination requirements based on an applicable Federal law" including "Title VII.") However, the Second Circuit has squarely rejected this argument. *See We The Patriots USA, Inc.*, 17 F.4th at 292 ("Because Section 2.61's text does not foreclose all opportunity for Plaintiffs to secure a reasonable accommodation under Title VII, the Rule does not conflict with federal law.").

Accordingly, the Amended Complaint fails to plausibly allege any Supremacy Clause claims.

### C.  First Amendment Free Exercise Claims

Defendants argue that Viola's claims against Section 2.61 under the Free Exercise Clause of the First Amendment have been squarely rejected by courts within the Second Circuit. (Mem. at 15 (citing *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, 2024 U.S. Dist. LEXIS 8658, at *7 (S.D.N.Y. Jan. 12, 2024); *St. Hillaire v. Montefiore Med. Ctr.*, 2024 U.S. Dist. LEXIS 7640, at *7 (S.D.N.Y. Jan. 16, 2024); *Anderson v. Hochul*, 2024 U.S. Dist. LEXIS 6153, at *13 (S.D.N.Y. Jan. 8, 2024).) Viola did not oppose this argument raised in Defendants' moving brief. (*See* Opp.) In failing to do so, she has abandoned her free exercise claims. *See Farag*, 2023 WL 2770219, at *2; *AJ Energy LLC*, 2019 WL 4688629, at *7.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend. I. The Free Exercise Clause specifically protects both "an individual's private right to religious belief,

38

as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion." *Kane v. De Blasio*, 19 F.4th 152, 163–64 (2d Cir. 2021). "This protection, however, 'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'" *Id*. (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990)). Further, "neutral and generally applicable laws are only subject to rational-basis review." *Id*.

In *We The Patriots USA, Inc*., the Second Circuit held that "Section 2.61 is facially neutral because it does not single out employees who decline the vaccination on religious grounds." 17 F.4th at 281. Accordingly, "[i]t is now well-settled in [the Second] Circuit that Section 2.61 is both neutral and generally applicable." *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-cv-3085, 2024 WL 168282 (S.D.N.Y. Jan. 12, 2024); *see also Algarin v. N.Y.C. Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 517 (S.D.N.Y. 2023), *aff'd sub nom. Algarin v. New York City Health & Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) ("Section 2.61 does not single out religious employees – it applies equally to all employees who can be vaccinated safely, regardless of their religious beliefs or practices, whether they have political objections to the vaccine, or question its efficacy or safety, or any of the many other reasons that people choose not to get vaccinated.").

Here, the Amended Complaint does not allege any facts to support Viola's assertion that Section 2.61 is not neutral. (*See* Am. Compl.) It alleges in a conclusory fashion that "[n]othing about the [vaccine] policies was generally applicable, and Defendants exercised enormous arbitrary and discretionary powers to make exceptions that allowed exposure for secular reasons but not religious." (Am. Compl. ¶ 130.) This allegation is entirely unsupported by either the text of Section 2.61 or the remaining allegations of the Amended Complaint. Such a conclusory and unsupported allegation fails to plausibly show that Section 2.61 is not generally applicable.

Because Viola has not met her burden to plausibly allege that Section 2.61 is not neutral and generally applicable, I analyze Section 2.61 under rational basis review.

As illustrated above, *supra* Discussion § V(A), Section 2.61 is reasonably related to a legitimate state interest in "protecting communities from serious, vaccine-preventable diseases through immunization . . . ." *Goe*, 43 F.4th at 32; *see also Andre-Rodney*, 618 F. Supp. 3d at (N.D.N.Y. 2022) ("[C]ourts in this Circuit and around the county have concluded that vaccination requirements such as the one imposed here pass muster under rational basis review," and that plaintiffs "failed to allege that the Vaccine Mandate is not 'reasonably related' to stemming the spread of COVID-19.") Accordingly, Viola fails to plausibly allege free exercise claims, and these claims are dismissed with prejudice under Rule 12(b)(6).

### D. NYSHRL Claims

Defendants argue that all NYSHRL claims are also barred under the Eleventh Amendment and therefore "are subject to dismissal in their entirety." (Mem. at 11.) Viola did not address or otherwise oppose this argument and has therefore abandoned these claims. *See* Opp.; *see also Farag*, 2023 WL 2770219, at *2. However, even if Viola had not abandoned these claims, I would decline to exercise supplemental jurisdiction over them.

A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, all federal claims are barred under the Eleventh Amendment and, in the alternative, are dismissed for failure to state a claim. *See supra* Discussion §§ III–V(C). Viola argues that the

Court may exercise supplemental jurisdiction over the NYSHRL claims under 28 U.S.C.

§ 1367(a) but has not alleged that the Court has original diversity jurisdiction over these claims

under 28 U.S.C. § 1332(a). (*See* Am. Compl. ¶¶ 31–33.) Accordingly, as this case is in the early

stages of litigation, I decline to exercise supplemental jurisdiction over the NYSHRL claims. *See*

*Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006)

("It is well settled that where, as here, the federal claims are eliminated in the early stages of

litigation, courts should generally decline to exercise pendent jurisdiction over remaining state

law claims."); *see also Tang v. Grossman*, No. 22-464, 2023 WL 2229366 (2d Cir. Feb. 27,

2023) (same) (summary order); *Haczynska*, 2024 WL 3178639, at *14 (declining to exercise

supplemental jurisdiction over NYSHRL claims after dismissing plaintiff's federal claims due to

failure to comply with hospital's vaccination requirement and collecting similar cases).

## VI.    Leave to Amend

Viola has not sought leave to amend her claims. Nevertheless, I have carefully considered

this issue and deny leave to amend.

A district court may deny leave to amend when an "amendment would be futile because

the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'" *Reynolds v.*

*City of Mount Vernon*, No. 14-cv-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015)

(quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (alteration in original)). Rules 15

and 16 of the Federal Rules of Civil Procedure govern a plaintiff's ability to amend the

complaint, and "when read together, set forth three standards for amending pleadings that depend

on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).

First, Rule 15(a)(1) permits "a plaintiff [to] freely amend her pleadings . . . as of right

without court permission" twenty-one days after a complaint is served or twenty-one days after

41

service of a responsive pleading or motion under Rule 12(b), (e), or (f). *Id*. Second, after the time to amend as of right has passed—"either upon expiration of a specified period [of time] in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent. *Id*.; Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-2978, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Third, Rule 15(a)(2)'s period of "liberal" amendment ends upon expiration of the date set by the court as the deadline after which no amendment will be permitted. *Sacerdote*, 9 F.4th at 115. At that point, Rule 16 also applies, and a court must balance the "liberal" amendment standard of Rule 15 with Rule 16(b)(4)'s requirement that the plaintiff show "good cause" for an extension of the deadline to amend. Fed. R. Civ. P. 16(b)(4); *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009); *see also Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (plaintiff must satisfy both Rules 15 and 16 to be permitted to amend after the deadline in the scheduling order has passed).

At this early stage of the action, the Court has not set a deadline after which no amendment will be permitted. Accordingly, leave to amend is analyzed under Rule 15(a)(2), and such leave must be denied only if there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties. *Adlife Mktg.*, 2018 WL 4568801, at *1 (citing *Foman*, 371 U.S. at 182); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015); *Sacerdote*, 9 F.4th at 115. Viola has already amended the Complaint once

42

and was able to review SBUH's motion to dismiss the original Complaint prior to filing the Amended Complaint. Thus, Viola already had an opportunity to address the pleading deficiencies in the original Complaint, which SBUH had identified in its original motion to dismiss. In fact, in a March 4, 2025 Order that granted Viola leave to amend the Complaint following service of SBUH's motion to dismiss that pleading, I warned Viola that "[i]t is unlikely that Plaintiff shall have a further opportunity to amend." (*See* Elec. Order, Mar. 4, 2025.) Nevertheless, as Defendants address, Viola made minimal changes to the Amended Complaint as compared to the original Complaint.

Additionally, as set forth above, even a liberal reading of the Amended Complaint does not give any indication that Viola can amend the pleading to cure any of the numerous identified threshold deficiencies—lack of standing for prospective relief, mootness, Eleventh Amendment sovereign immunity—or the failure to state any plausible federal claims. Accordingly, leave to amend the Amended Complaint is denied under Rule 15(a)(2).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction is granted, and the Amended Complaint is therefore dismissed on the following grounds: (1) all claims for prospective relief are dismissed without prejudice for lack of standing and as moot under Rule 12(b)(1); (2) all claims against all Defendants are dismissed without prejudice under Rule 12(b)(1) as barred by Eleventh Amendment sovereign immunity; and (3) all claims against SUNY, Gomes, and King are dismissed without prejudice for insufficient service of process under Rule 12(b)(5) and lack of personal jurisdiction under Rule 12(b)(2). In the alternative, all claims under 42 U.S.C. § 1983 for relief under the Fourteenth Amendment, First Amendment, and Supremacy Clause of the

43

U.S. Constitution are dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

Finally, I decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state

law claims in this action, and such claims are therefore dismissed without prejudice under 28

U.S.C. § 1367(c). Accordingly, the Amended Complaint is dismissed in its entirety and without

leave to amend.


Dated: Central Islip, New York
       June 9, 2026


                                  */s/ Nusrat J. Choudhury*
                                    NUSRAT J. CHOUDHURY
                                    United States District Judge